22-2203. We'll hear from Mr. Campbell first. Will you be reserving time for rebuttal? Yes, Your Honor. Five minutes. That's great. Thank you. Good morning, Your Honors. Matt Campbell, Federal Public Defender, Virgin Islands, on behalf of Mr. Brow. I would like to reserve five minutes for rebuttal. I'd like to address the three disputed issues I believe the court must resolve in deciding this appeal. And the first issue I believe that the court must resolve is regarding the government's argument about sentence being completed. So effectively the case largely being moot. As we argue in our reply brief, so what's the relief you see? We're asking for a sentence reduced of the incarcerated term. So you want us to affect the length of the voluntary manslaughter? No, Your Honor. I don't believe that the court needs to reach that issue in this case because the government's arguments are weighed. The government has held to the same standard that any litigant has held regarding waiver. And we cited the U.S.B. Bradley, U.S.B. Dupree, and U.S.B. Stern cases. Obviously, waiver applies in criminal cases as well. And we argue U.S.B. Ward and U.S.B. Wasserson. The arguments presented in the court of appeals must depend on both the same legal rule and the same facts in arguments presented in the district court under U.S.B. Joseph. The degree of particularity required to preserve an argument is exacted under Joseph. Now, as we set forth in our brief, all of the arguments that the government presents in regard to waiver were available to the government. The sentence was calculated a significantly long time ago. Those arguments were available in 2017 that the sentence was completed. First Step Act obviously didn't come out until the end of 2018. The motions were filed in 2019, and the government even supplemented its position in 2020. So the government could have raised this issue at the outset of Mr. Brown's motion. In 2017, where did your client stand on the original 30-year sentence? Your Honor, it was, was, was, I thought I'm understanding you telling me if I'm wrong, whether it's 85% or whatever the appropriate percentage, he was pretty close to the end or at the end of 2017. So what, what argument are you alluding to? Your Honor, what I'm alluding to is, and it's a little bit unclear as to the exact date that the sentence, the 30-year sentence, would have been completed because of the calculation of good time and the like, but it appears that that argument would have been right, i.e. that the 30-year sentence was complete sometime in 2017. I'm not 100% positive of the date because the documents submitted don't state exactly when that would have been. So let's agree for our purposes that it's 2017. Agreed. So if you want a reduction in sentence, are you saying that a reduction in the period of supervised release is the reduction in sentence that you seek? You said the incarceration period a moment ago, and that's why I'm confused, because if we're, if we're including the voluntary manslaughter, I get it. We can discuss whether we agree with it, but I get it. But if not, then I'm, I'm not clear. Well, Your Honor, strictly speaking, I don't think, I don't think that the District Court of the Virgin Islands would have had jurisdiction to because it was from another, from another district. However, what the argument is that the Bureau of Prisons essentially computes Mr. Brown's end date by combining those two sentences together. They, they don't list, for example, a release date on one conviction and then a release date on another conviction. They list one release date. So we were asking for a reduction in the sentence, which necessarily at this point would in essence affect what the ultimate release date is. Help me now. I'm calling you to help me. How do we use the first step that the fair sentencing act, that I understand, how do we get that or those two statutes to affect the voluntary manslaughter, which admittedly is in a separate district, a separate sentence, and was consecutive? Your Honor, I don't, I don't think this court needs to reach that issue. Frankly, I don't think the District Court needs to reach that issue because it had, for example, the District Court issued an order that said the 30-year sentence is hereby reduced to 25 years. That information will be transported, will be transmitted to Grand Prairie where they compute a sentence length and they could simply recalculate the sentence, the combined total sentence, which would now be, I believe, 35 years instead of 30, instead of 40, and they could calculate a new release date. Why are we injecting ourselves into the Bureau of Prisons calculation system, right? Your client received the sentence here, received a separate sentence somewhere else, the Fair Sentencing Act and the First Step Act affect the first, there's nothing in those statutes that affects the Bureau of Prisons' ability or discretion to calculate that. Because the, I, the question before the court is, is the government's, in essence, procedural argument properly before this court? And the answer to that is no. If the, if the government had evidence, all right, let's assume we agree with you that the government waived that procedural argument. Yes. I think what Judge Greenaway is getting to is your client wants some relief under the First Step Act. Correct. I heard you say we can't give relief under, we can't give relief to your client on the involuntary manslaughter conviction. Correct. Correct? Correct. So we're dealing with the drug conviction, the 841 conviction. Sure. Which you agree was completed before the First Step Act was passed. I'm not contesting that. Correct. Okay. I mean, you know, I think you, you can win the battle here on waiver, but it seems to me that there's nothing that we have the power to do. Respectfully, Your Honor, I think this is, the situation is akin to some of the cases that came up post-Johnson 2015 in the ACCA context, when people were resentenced after having completed more than 10 years on a 922-G. And the courts did not simply say, there's nothing we can do. They conducted resentencings at which they issued a sentence. And if there was an over-served amount of time, that was bank time that would then go against their supervised release revocation, if any, that posted. So what is that all you're asking us to do then? Is that we agree with you that the time, the excess time on the drug conviction will go to reduce the supervised release time? No, Your Honor. What I'm saying is that the fact that a sentence has expired does not inherently, for lack of a better term, boot out the argument. And in this case, if this, if his sentence were reduced to 25 years, then Grand Prairie could recalculate. So there's no problem with finding that the government has waived this argument. There's no inherent problem with it. If he's over-served... I don't understand the recalculation. Because if the voluntary, if the manslaughter conviction stands on its own, and a sentence was issued pursuant to that conviction, you know, how is whatever happens with this offense going to lower that sentence? That just logically doesn't make sense. Well, what are we to rely on to make that happen? If a judgment is issued, in this case, and again, just use the hypothetical, that the sentence should have been 25 years instead of 30, then Grand Prairie will have a new judgment. What they do with it is not necessarily part of this case. They will then recompute it. If they don't, Mr. Rauch can file a 2241 motion in the Middle District of Florida, where he's currently... So in the best case, let me make sure I understand that issue. Although, as you're maybe not, it's not before us. If they recalculate, are you saying they can apply five years of his over-served time on the drug conviction towards the involuntary manslaughter conviction? Yes. You're saying that's a possibility? Yes. So you would bring our judgment to another court and say, hey... No, Your Honor. I don't, respectfully, I don't think I would have to. The judgment will get sent to Grand Prairie. They would do a computation as to when his release date is. All right. Presumably they... What does that happen before? What is what you are suggesting happen? Your Honor, I'm not positive that I can cite to a particular case. It has... No, I mean off the top of my head. But I'm happy to do some research because I have a memory that it did occur in the Johnson context, where people had an ACCA sentence of 15 years or more that was then reduced to 10 years or less, and perhaps it picked up a conviction in prison. I'm happy to look into that and submit a 28-J on it. But I can't recall a case off the top of my head. I know that these types of issues came up in the Johnson context. I love that because, to be honest, I think what you're suggesting is quite ingenious, frankly, but I don't think we can do it. Yes. Understood, and I'm happy to do some research. So, Mr. Campbell, your proposed process for helping your client, if we agree with you, are you saying it's different than what the Second Circuit found in United States v. Martin? I'm not... I'd have to go back and double check, but I'm not sure that the argument that I raised was raised in Martin. But I agree. I'm asking for a reduction in the incarcerated term in the sentence, not just, for example, supervised release relief or the like. I see I'm over my time. This was an interesting curveball that took up a little time, but, you know, so put aside the issue that you have. I presume all of this is removed if we don't agree with you on the career offender status of your client with regard to two of the three. Well, I think there's still the question of the reasonableness, substantive and procedural reasonableness, of the district court's ultimate ability. Would you say it's a substantive reasonableness if we find that he's a career offender? Sure. Because it would be sentenced now under post-Booker, so the guidelines are no longer mandatory. So there's still a reasonableness argument to be made. In regard to the career offender issue... I mean, it's interesting that the... doesn't the Supreme Court's guidance in the movement's guideline range can only take into consideration FSA-related changes in the law? Well, I think here we do have FSA-related changes in the law that are applicable to the guidelines, because even if he were a career offender, there would still be an argument that his guideline range would change because... I mean, I was under the impression that his Well, except that the maximum term that he would be subject to can be amended either from a 37 to a 34 or even a 32, depending on what the statutory max of his offense is. So I think even as a career offender, that would be an issue. We would ask the court to give particular consideration in regard to the, admittedly, three predicates, to the assault with a deadly predicate in particular. And the government even cites to a case called Prince v. People. It's cited in their brief at page 37. And in that case... because one of the issues, I think the main issue that comes up in that context, is whether a deadly weapon should be assessed as to how it is used in this particular case. That's the point the government makes, so therefore it must be a crime of violence because a two-by-four is not necessarily a weapon unless somebody's using it as a deadly weapon. And Prince v. People, I think, puts the light of that because it speaks to a weapon being a deadly weapon if it has the apparent ability to injure the victim seriously by using the object. So the idea that weapons must be assessed as to how they're used in a specific case is belied by the Virgin Islands Supreme Court in its own jurisprudence. That's a case the government cites. So we think that that clearly shows that assault with a deadly weapon is not categorically a crime of violence. All we need to do is show one case was wrong because there were three predicates if one of them falls. And we think that one clearly falls under that issue. So let me ask you this question. Judge Aguirre's brought up Concepcion. And in looking at talks about how we should think about C-2 as opposed to C-1B. And I thought the footnote suggested that you don't think about substantive reasonableness, but you think about abuse of discretion as the standard to apply. So I know that's deep into the weeds, but you're a weak guy. Thank you, I think. Yes, and I agree that is sort of a deep in the weeds type of issue. And the best answer I can give the court is that I think theoretically there may be a difference between a discretion argument. And frankly, the government and I had discussed this with each other in preparing for the argument. And we had said if this issue came up, we could mention that. And I think the position that I would respond to your honor with is the distinction between those two could be more real if there was a situation where the difference between the abuse of discretion and the substantive reasonableness, for example, had to do with a situation where the statutory minimums and maximums perhaps were higher and then were clearly lowered. And the question was, did the court, where it might be clear that it's a substantively unreasonable sentence because it's illegal, but it's not an abuse of discretion because the court has to decide the motion based on Alain Apprendi or something like that. So that makes some sense. I think if there's just an argument under the 3553A factors that a decision was incorrect, then that theoretical distinction starts to fade. I believe the government would agree with me on that point that on the substantive reasonableness versus abuse of discretion in the 3553A context, it's probably a distinction without a difference, but I'll let them speak for themselves. The court's been very patient with me, so I don't want to try that patience. Thank you. We'll hear from your friend. Incidentally, I think it's a pretty mature thing to collaborate before arguing in hell and arrow things and find the areas of agreement. I think that's a good practice. Good morning, your honors. May it please the court. Adam Sleeper on behalf of the United States. I wanted to first address this waiver issue that my friend has raised. The government, of course, as it must, has to admit that it did not raise the issue that the defendant had fully served his term of incarceration in the district court. Where the government disagrees, however, is I think this is better characterized as forfeiture rather than waiver. I don't think there's anything in the record indicating that there was intentional relinquishment of rights and that's significant to the procedural context that we're in because this court may affirm on any basis in the record as long as an argument is only forfeited rather than waived. I would also note that because down in the district court the defendant had sought both a reduced term of incarceration and a reduced term of supervised release, it appears on appeal that the defendant is now only seeking a reduced term of incarceration. When he was also seeking reduced term of supervised release, that potential for a reduced term stopped his motion from being moved. But now we're in... Yeah, hi. Thank you. So let's just stay with that point for a moment. So your point, if I grasp it, is all right, we're taking supervised release off the table and the battleground is only on the incarceration period. Now, we've heard this argument on the incarceration period. It seems a little confusing to me, so help me. Number one, are you aware of any precedent that we can look to for this? It seems... I know that he's alluded to the ACCA context. I haven't come across that. Love to be edified. Your Honor, I haven't come across it as well. I can't stand up here and tell you definitively it doesn't exist, but I am not aware of any authority for that. But how do we think about this, right? I mean, if I'm understanding the argument, it's... Here's a sentence, two statutes that affect a particular sentence. The sentence is already served, but something that we do, presumed to those two statutes, can affect an entirely different sentence. In an entirely different territory here, state there, how does that work? Just theoretically. I think the argument would be that it's some type of collateral consequence that saves this from movements, but the Martin case specifically addressed this issue and determined that the provision that allows the Bureau of Prisons to combine sentences from the Georgia case... In that case, it wasn't the Georgia case, but to combine sentences in different cases is purely an administrative combination and it's not the type of collateral... So you would agree with your friend that it would just be the Bureau of Prisons that would say, look at this, this is actually reduced. You basically get a credit on the other one and we'll take care of it, type of thing. That can happen? I think that it's conceivable that the Bureau of Prisons would do that because what they do is they combine their two sentences and if one sentence went from 20 to 25 years, then your total combined sentence would be 35 and that's what they would be putting into effect. But as I mentioned, the Second Circuit in Martin specifically addressed this argument, specifically rejected this argument, determined that that would not save the case from movements. So you think Martin does apply to this? Absolutely, Your Honor. I think it was addressing exactly the situation that was presented here and the exact arguments that are being raised here. How should we think about the concession argument you make? You assign to Appendix 93 and say that Mr. Hunter, is that right? Was the former trial counsel black and white? I'm not certain. Trial counsel conceded a sentence, right, on the issue of career tenure. What effect, putting aside the argument, the issue of justice, what effect should that have on our career vendor analysis and ultimately how we think about this? To be honest, Your Honor, I don't think that that is particularly significant. We're in a bit of an interesting, this decision came out in sort of a bit of an interesting intervening time when there was some precedent from this court and before Concepcion was issued. So the district court issued her decision as if she was recalculating the entire sentencing guideline range based on new law. While that's, strictly speaking, not the way to go about it after Concepcion, I think that it's a pretty good indication of how the district court would rule if she was to be considering changes in new law, changes in the law under the 3553A factors in the context of Concepcion. So, you know, I don't think that a defense counsel's concession in the early 90s about someone being a career offender would really impact a now sort of defendant is still a career offender under current law. Unless... Oh, don't worry. There's more than, oh, you were going to open up the virtual, I'm sorry. I thought you were going to say, unless there are any more questions, I'll sit down. No, no, no. You know, turning to the merits of the argument that there is no ability to reduce the term of incarceration once it's been served under the First Step Act, we would ask this court to follow United States v. Martin and the second circuit in United States v. Martin and the panel of the 11th circuit in United States v. ASCU. I think what is most significant here, I think, is the legislative backdrop that was present and the motions for sentencing reductions based on crack cocaine sentences out of 3582C2 and 1B1.10. Now, obviously, 1B1.10 does not apply here by its terms, but there's no reason to believe that Congress would have wanted this to for the court to interpret the First Step Act to allow a reduction in this context would be to be providing a benefit to people who have committed crimes resulting in consecutive sentences. So, for example, if there's no reason to believe that Congress would have intended that someone, like the defendant in this case, murder someone or manslaughter someone while in prison should be receiving a lower sentence purely from the happenstance that they committed a crime while they were in prison that led to a consecutive sentence. I know the second circuit also draws textually on the use of the word impose. I think that also provides some textual hook for that holding as well. And I think the other issue here is that, in effect, if the defendant were right and he could get this type of reduction and the Bureau of Prisons would take it into account in the way he did, fundamentally what we'd be doing here in a practical manner would be reducing the term of incarceration on a non-covered effects. That would be the effect of what's being done. And so, for all of those reasons... What if Mr. Brown had his sentence properly calculated to end up in 2017 and didn't have the involuntary manslaughter conviction but was on supervisory lease? What would Would we be able to provide some relief on that supervised release sentence that he was currently serving? I believe so, Your Honor. Yes. But that's not... And that could theoretically be the circumstance here, but on appeal the defendant has indicated that he is only arguing for a reduced term of But before you got to what Judge Fischer just alluded to, that would require a different ruling on the career offender so that that would be an available relief? Well, I'm not sure it would require a different ruling on the career offender because the district court, even if there was no change in career offender, could hypothetically exercise its discretion to reduce the sentence even though there was no change because it is a covered offense. There wouldn't be a strong... There wouldn't be a good reason... You mean counsel would make a third guide to P3A, aren't it? Correct, Your Honor. Or it wouldn't be... While nothing could change theoretically in the guideline calculation and a district court could still exercise its discretion. I don't think there would be any persuasive reason to do so, and I don't know that I think a district court would, but I'm not sure it would turn it on. Even after Concepcion, I'm not sure I follow you where you're going here, but... Your Honor, all I'm saying is that I think the district... So once you have a covered offense in a district court, then the district court can reduce the sentence. Now, if nothing had changed as far as the sentencing guidelines go and nothing had changed as far as the 3553A factors, certainly we wouldn't think the district court should exercise its discretion to do that. It would be a question of whether it was an abusive discretion or not, but... Okay. Assume we got over all these hurdles. Assume Mr. Campbell got over all these I'm not quite sure I understand what Mr. Brown's argument is here on appeal and merits. Is he arguing that his offenses were not crimes of violence and therefore he wasn't a clear offender? Because that's what it seems to me he raised on appeal here, as opposed to what he raised with district court. So where were we? What can we consider? Your Honor, so there are the defendant has three charges that the... Three convictions, excuse me, that the district court looked at below. There were two assault convictions, assault with a deathly weapon, and assault inflicting serious bodily harm, and a robbery, a third degree robbery charge. For the defendant to remain a career offender under current law, the court need only find that two of those were crimes of violence. I think the easiest one here in my view is the robbery offense. This court held in the United States v. Carmona that the statute there incorporates common law robbery, and the Supreme Court has held that common law robbery satisfies the force clause because it requires that type of force. I don't... Well, Carmona was about specific intent, specific intent... The specific intent issue was decided based on the fact that specific common law robbery, and was therefore included because the statute codified common law robbery. So I don't see how my friend can get around Carmona. I think robbery is clearly a crime of violence. As to assault with... To inflict serious bodily... Inflicting serious bodily harm, and assault with a deadly weapon, I also think that that's foreclosed by this court's decision in United States v. Bullock, which was interpreting the very similar language in 18 U.S.C. 111b. And beyond that, I would also say, you know... So if you're right on the two crimes of violence you've mentioned, based on what's before us in Mr. Brown's argument before our court, that's the end of the question, is it not? There's no reduction. He's not entitled to any reduction. Well, I think he's also allowed to argue the other 3553a factors. He's arguing that the district court abused its discretion by not crediting some 3553a factors more than others. I would say that, you know, I think that's an argument about the weight of the factors, and doesn't have any merit for that reason. But other than that, I would agree with you, and the argument is the clear effect issue. With respect to the 35... the weighing of factors by Judge Lewis, the district court's broad allusions to the violent drug crime problem in the Virgin Islands, isn't that... I mean, that's an important thing, obviously. But this person's age, and the individual spent a long time in prison, doesn't that deserve more weight than it seemed to be given? Your Honor, I think there's two things. One, I think the comments about the violent crime, that was made in the context of general deterrence, and the importance of the district court is entitled to weigh the 3553a factors. He needs to consider the arguments. Now, members of this court may have weighed them differently, or they may have weighed them the same, but that doesn't mean that the district court abused your discretion in making that judgment. And also in determining that his past recidivism for violent offense was more important than the statistical decrease in likelihood of recidivism. Let me ask you another question. Regarding application of Apprendi in this type of FSA context, you cited a lot of district court cases. Would we be the first court of appeals to posit on this if we write on that issue? Your Honor, I do not have... I could not tell you every court of appeals that I've done. I know the 11th Circuit... so the government's position is that Apprendi and Allain does apply. The 11th Circuit has rejected that argument. I do not have a list of cases for you, and I'm not aware of which circuit courts have adopted it, if any. But the Apprendi and Allain argument that you made, I thought, applied to the mandatory minimum as it relates to supervised release. So I take it that we wouldn't have to address this Apprendi and Allain argument that you make if the only issue that the defendant appellant is making is with regard to the incarceration period. Your Honor, if you resolve this by joining the Second Circuit in Martin and saying that you can't reduce your term of incarceration below time served, and because the defendant is now only seeking a reduction in time served, then there would be no reason to reach that issue. And if we dealt with that issue, let's say we agree with counsel that should be our primary focus, if we apply Martin, say that he's incorrect, is that the end of the opinion? Yes, Your Honor. Now that it is clear that the defendant is only seeking a reduced term of incarceration, that would be the end of the opinion. So we wouldn't have to go and apply on everything, the merits that so speak, would we? Correct, Your Honor. Okay. Thank you. Okay, thank you, counsel. Thank you, Your Honor. Is your friend right that that's the only thing you're focused on, the incarceration period, and not supervised release? Correct. Not to lighten things up further, but in regard to the waiver issue, the government concedes that it didn't raise it below, but it argues here that at most it would be forfeiture and plain error. I don't think that's correct either, because I think it has effectively waived its right to argue that it's forfeiture. If the government wanted to present that point, it should have presented that in its brief. It also says, though, that you can use anything to support an affirmance, right? It does, but I think the government has to at least make that argument in its briefs. Had it made its arguments in the briefs, I could have responded in my reply as I did to the fact that it made no mention of it. In my experience, it's fairly commonplace that if I'm going to in my brief that is under a plain error standard, I brief the alano factors in my opening brief. Here, the government presented that information in its brief and never mentioned it, never mentioned that plain error applied. So the court now has no application of, I believe it's the four alano factors, in regard to whether plain error review applies here and how it should be applied. The government certainly hasn't, I don't believe, has adequately demonstrated that the error was plain. And I forget the exact wording of it. I believe it's the fourth factor that talks about bringing disrespect to the system or something. Yes. So I don't think the court should... My position is that all this talk about how the sentences would be affected, the court can't reach that issue at all, because the government has waived it. The government waived it when it didn't bring this below. The government waived it when it didn't brief it. So the issue is waived. So what did you waive though in your brief? You did not raise... It seems to me in your brief before this court, your case, if you get that far to the merits, is based on whether or not there were two crimes of violence to make your client a career offender. I think there's... Yes. I think that issue exists. And I would, in all candor, say that Mr. Brow certainly has a much stronger case if the court reaches the issue and finds that he was not a career offender. However, I did also brief essentially substantive and procedural reasonableness of the district court's decision, including how it weighed the factors and addressing some of the issues that were just discussed at the end of the government's argument regarding the proper weight for what the government calls general deterrence versus perhaps specific deterrence of Mr. Brow, his increased risk of recidivism, or his decreased risk of recidivism, and the court's discussion about the need, the danger that violent drug crime presents the Virgin Islands now, which has no drug crime, that was committed in 1989 did. I would also point out that I think, I believe, was Chief Judge Chigueras... Suppose in 1989... Well, I suppose the point is she didn't make this point, but if she had said that in 1989 drugs were infesting this area unlike anything else, then that would have satisfied what she needed to say because any reference generally... Well, Your Honor, I think there's... I think the problem is that we raised was that there's both a procedural reasonableness and a substantive reasonableness issue here. The discussion was very brief. There was sort of a casual mention to the harm that violent drug crime causes in the Virgin today, and I think there's two problems with that. Number one, Mr. Brow's offense is from 1989, and it was non-violent, so there is... It's difficult to see the causal relationship, so that's a procedural problem, but it's also a substantive problem in that we now are that many years later, and his risk of recidivism has gone down exponentially based on his age, so we have those two issues, both procedural and substantive. The fact that there were the procedural problems of having an extremely cursory discussion, I think, also speaks to the substantive problems, which we don't really have the type of weighing that we should have had, particularly more considering what I would argue is a largely irrelevant factor of Virgin Islands drug issues today. Obviously, Mr. Brow has no bearing on that when his offense was committed over 30 years prior. The court has, again, been very patient. I'm happy to answer any other questions, but otherwise, I thank you for your time. Okay, thank you, counsel. Thank you. We thank counsel for their excellent written and oral presentations, and we'll take the case under advisement.